IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LESTER PASCUAL, an individual, and ) | CIVIL NO. 10-00759 JMS-KSC |
| OFELIA PASCUAL, an individual, ) | |
| ) | ORDER GRANTING DEFENDANT |
| Plaintiffs, ) | AURORA LOAN SERVICES, |
| ) | LLC'S MOTION FOR SUMMARY |
| vs. ) | JUDGMENT (WHICH THE COURT |
| ) | CONSTRUES AS A MOTION TO |
| AURORA LOAN SERVICES, LLC and ) | DISMISS) |
| DOES 1-100 inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## ORDER GRANTING DEFENDANT AURORA LOAN SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT (WHICH THE COURT CONSTRUES AS A MOTION TO DISMISS)

### I. INTRODUCTION

This action arises from a February 12, 2007 mortgage transaction in which Plaintiffs Lester and Ofelia Pascual ("Plaintiffs") borrowed $630,000 from Lehman Brothers Bank, F.S.B. ("Lehman Brothers"), secured by a promissory note and mortgage on real property located at 468 South Oahu Street, Kahului, Hawaii 96732 (the "subject property"). On September 20, 2009, the Hawaii Bureau of Conveyances recorded an assignment of the mortgage to Defendant Aurora Loan Services, LLC ("Defendant"), who subsequently foreclosed on the subject property. Plaintiffs' First Amended Complaint ("FAC") asserts that Defendant

violated Hawaii's non-judicial foreclosure statute, Hawaii Revised Statutes

("HRS") § 667-5, by foreclosing on the subject property because the transfer of the

mortgage to Defendant was improper.

Currently before the court is Defendant's Motion for Summary

Judgment, arguing that Plaintiffs have failed to establish a genuine issue of

material fact that the mortgage was improperly assigned to Defendant.  Based on

Plaintiffs' request and because the court can determine Defendant's Motion based

on judicially-noticed evidence only, the court treats Defendant's Motion as a

Motion to Dismiss.  Based on the following, the court finds that the FAC fails to

state a claim upon which relief can be granted and GRANTS Defendant's Motion

to Dismiss.  Because granting leave to amend would be futile, this dismissal is

without leave to amend.

## II.  BACKGROUND

### A.    Factual Background

On February 12, 2007, Plaintiffs borrowed $630,000 from Lehman

Brothers, secured via a mortgage on the subject property.  Doc. Nos. 43-2, 43-3,

Def.'s Exs. 1-2.  The mortgage identifies Lehman Brothers as the lender, and states

that Mortgage Electronic Registration Systems, Inc. ("MERS") "is a separate

corporation that is acting solely as a nominee for Lender and Lender's successors

and assigns.  MERS is the mortgagee under this Security Instrument."  Doc. No.

43-3, Def.'s Ex. 2 at 2.  The mortgage further provides:

> Borrower does hereby mortgage, grant and convey to
> MERS (solely as nominee for Lender and Lender's
> successors and assigns) and to the successors and assigns
> of MERS, with power of sale [the subject property]. . . .
> Borrower understands and agrees that MERS holds only
> legal title to the interests granted by Borrowers in this
> Security Instrument, but, if necessary to comply with the
> law or custom, MERS (as nominee for Lender and
> Lender's successors and assigns) has the right:  to
> exercise any or all of those interests, including, but not
> limited to, the right to foreclose and sell the Property; and
> to take and action required of the Lender.

*Id.* at 3.  Finally, the mortgage notifies Plaintiffs that "[t]he Note or a partial

interest in the Note (together with this Security Instrument) can be sold one or

more times without prior notice to Borrower."  *Id.* at 12.

On September 15, 2008, Lehman Brothers filed for voluntary Chapter

11 bankruptcy.  *See* Doc. No. 55-3, Pls.' Ex. 8.  On October 1, 2009, the State of

Hawaii Bureau of Conveyances recorded an April 15, 2009 Assignment of

Mortgage from MERS, solely as nominee for Lehman Brothers, to Defendant.  *See*

Doc. No. 43-4, Def.'s Ex. 3.

In early 2009, Plaintiffs defaulted on their loan, which resulted in

Defendant filing a Notice of Mortgagee's Intention to Foreclose Under Power of

Sale, recorded with the Hawaii Bureau of Conveyances on October 8, 2009.  *See*

Doc. No. 55-3, Pls.' Ex. 4.  A public auction was held on October 1, 2010, with

Defendant being the high bidder with a credit bid of $304,000.  Doc. No. 43-5,

Def.'s Ex. 4.  On October 28, 2010, Defendant recorded a Mortgagee's Affidavit of

Foreclosure Sale Under Power of Sale.  *Id.*

## B.     Procedural Background

On December 21, 2010, Plaintiffs initiated this action, asserting a

panoply of claims against Defendant, Nestor E. Segundo (Plaintiffs' mortgage

broker), and MERS.  After Defendant and MERS filed a motion for summary

judgment, the parties stipulated to dismissal of most of the claims and to the filing

of an amended complaint.

On September 12, 2011, Plaintiffs filed their FAC asserting a single

claim that Defendant violated HRS § 667-5 by foreclosing on the subject property

without a valid assignment of the mortgage.  The FAC seeks a declaratory

judgment that the assignment from Lehman Brothers (via MERS) to Defendant is

invalid such that the non-judicial foreclosure is void.

Defendant filed the present Motion to Dismiss on February 29, 2012.

Plaintiffs filed their Opposition on May 25, 2012, and Defendant filed its Reply on

June 4, 2012.  Plaintiffs filed a Supplemental Response on June 14, 2012.  A

hearing was held on June 18, 2012.

**C.     Construing the Motion for Summary Judgment as a Motion to Dismiss**

Although Defendant styled its Motion as a Motion for Summary Judgment, it relies largely on documents that were attached to the FAC and/or recorded in the Hawaii Bureau of Conveyances, and makes a legal argument that Plaintiffs' claim fails as a matter of law.[1]  As a result, Plaintiffs argue in their Opposition that the court should view the Motion for Summary Judgment as a Rule 12(b)(6) motion.  The court agrees that Defendant could have made the same arguments in a motion to dismiss as opposed to a motion for summary judgment such that Defendant's Motion should be treated as a Motion to Dismiss.  *See Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) ("A motion for summary judgment may be made solely on the pleadings, when it is so made it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings." (internal quotation marks omitted)); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice & Procedure § 2713 (3d ed. 1998) ("[A] summary-judgment motion may be made on the basis of the pleadings alone, and if this is done it functionally is the same as a motion to dismiss for failure to state a claim or for a judgment on the pleadings.") (footnotes

---

[1]  Although Defendant also submits the Declaration of Kristen Trompisz, *see* Doc. No. 25-2, Def.'s Ex. 6, the court need not consider it to address the arguments presented by the parties.

collecting cases omitted); *see, e.g.*, *Sutor v. FEMA*, 2009 WL 2004375, at *3 n.4 (E.D. Pa. July 9, 2009) (treating motion for summary judgment as motion to dismiss because the motion did not require the court to considering documents outside the pleadings).

At the June 18, 2012 hearing, the court explained that it would treat Defendant's Motion as a Motion to Dismiss. The court further explained that by converting the Motion to one brought under Rule 12(b)(6), the court must consider whether Plaintiffs should be granted leave to amend if the Motion is otherwise granted. In fact, Plaintiffs had already offered new theories of relief in their Opposition (that is, claims in addition to the single claim in the FAC) and they represented at the June 18, 2012 hearing that their briefing included all theories that they wished to include in an amended pleading. And because Defendant had responded to these new arguments in its Reply, Plaintiffs and Defendant concurred at the hearing that the briefing was complete as to the claims Plaintiff would seek to include in a second amended complaint and on the issue of whether it would be futile to make these specific allegations. The court therefore construes the Motion as a Motion to Dismiss and, finding that the FAC fails to state a cognizable claim, determines whether it would be futile to allow amendment.

### III.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

7

*Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## IV.  DISCUSSION

The court first addresses whether the FAC asserts a cognizable claim for violation of HRS § 667-5, and finding that it does not, then addresses whether Plaintiffs should be granted leave to amend.

### A.    Claim for Violation of HRS § 667-5

HRS § 667-5(a) provides:

> When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.

The FAC asserts that Defendant violated HRS § 667-5 when it foreclosed on the subject property because it is not "the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act."

8

Specifically, the FAC asserts that MERS "never had the authority to validly transfer such an interest in the subject property to [Defendant]," Doc. No. 36, FAC ¶ 15, because its authority is limited to administrative functions and Lehman Brothers did not grant MERS authority to assign the mortgage to Defendant. *Id.* ¶¶ 16-26. Defendant argues that this claim should be dismissed because, among other reasons, MERS had authority to assign to Defendant all beneficial interest in the mortgage, including the right to exercise the power of sale. Based on the following, the court agrees with Defendant.

The role of MERS was recently explained by the Ninth Circuit in *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (9th Cir. 2011), as follows:

> MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the "lender." . . .
>
> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest

9

in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

*Id.* at 1038-39.  *Cervantes* held that claims attacking the MERS recording system as a fraud fail, given that mortgages generally disclose MERS's role as acting "solely as nominee for Lender and Lender's successors and assigns," and that MERS has the right to foreclose and sell the property.  *Id.* at 1042.

Just like in *Cervantes*, the mortgage expressly notifies Plaintiffs of MERS's role as the nominee for the "Lender and Lender's successors and assigns." The mortgage clearly outlines MERS's role by providing that: (1) MERS 'is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," Doc. No. 43-3, Def.'s Ex. 2 at 2; (2) Plaintiffs "mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale [the subject property]," *id.* at 3; (3) "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrowers in this Security Instrument," *id.*; and (4) "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  *Id.* at 12.  Further, MERS exercised this authority granted to it by Lehman Brothers by assigning the mortgage to Defendant.  *See* Doc. No. 43-4, Def.'s Ex. 3.

10

In light of the express disclosures in the mortgage giving MERS the authority act on behalf of Lehman Brother and the transfer of the mortgage to Defendant, Plaintiffs have no basis to assert that Lehman Brothers did not authorize MERS to transfer the mortgage.  Indeed, this court has already rejected numerous borrowers' claims challenging MERS's authority to assign, on behalf of a lender, the mortgage.  *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *4 & *5 n.5 (D. Haw. Feb. 23, 2012) (explaining that a borrower cannot challenge an assignment that he was not a party to, and that plaintiff may not assert claims based on the argument that MERS lacked authority to assign its right to foreclose); *Lindsey v. Meridias Cap., Inc.*, 2012 WL 488282, at *3 n.6 (D. Haw. Feb. 14, 2012) ("'[A]ny argument that MERS lacked the authority to assign its right to foreclose and sell the property based on its status as 'nominee' cannot stand in light of [*Cervantes*.]" (quoting *Velasco v. Sec. Nat'l Mortg. Co.*, 2011 WL 4899935, at *11 (D. Haw. Oct. 14, 2011)); *Teaupa v. U.S. Nat'l Bank N.A.*, --- F. Supp. 2d ----, 2011 WL 6749813, at *16 (D. Haw. Dec. 22, 2011) (dismissing without leave to amend claim asserting that MERS lacks standing to foreclose); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (dismissing claim challenging MERS's authority to assign the mortgage on the basis that "the involvement of MERS in the assignment cannot be a basis for

voiding the assignment, much less for a claim of fraud").

In sum, the court finds that the FAC fails to assert a claim for violation of HRS § 667-5 based on MERS's alleged limited authority to assign the mortgage. The court GRANTS Defendants' Motion to Dismiss.

## B.    Leave to Amend

The court recognizes that leave to amend a pleading should be granted where such amendment would not be futile. In their Opposition, Plaintiffs proffered additional theories attacking Defendant's ability to foreclose on the subject property. Based on the following, the court finds that Plaintiffs fail to offer any claim that is plausible on its face such that granting leave to amend would be futile. *See Cervantes*, 665 F.3d at 1043 ("[L]eave to amend would be futile because the plaintiffs cannot state a plausible basis for relief.").

For example, Plaintiffs argue that Defendant violated HRS § 667-5 by failing to affirmatively demonstrate that it is a proper mortgagee entitling it to foreclose on the subject property. Doc. No. 54, Pls.' Opp'n at 12. Plaintiffs assert that pursuant to HRS § 502-82, they may contest all title documents recorded in the Hawaii Bureau of Conveyances affecting title to the subject property. *Id.* at 10-11. Plaintiffs' argument is supported by neither fact nor law -- § 502-82 allows a party to rebut, as opposed to merely challenge, a recorded instrument. In relevant part, §

12

502-82 provides:

> The record of an instrument duly recorded, or a transcript thereof, duly certified, may also be read in evidence, with like force and effect as the original instrument. Neither the certificate of acknowledgment, nor the proof of any instrument, is conclusive, ***but may be rebutted***, and the force and effect thereof may be contested by any party affected thereby.

(emphasis added).  Nothing in the plain language of § 502-82 or § 667-5 requires Defendant to come forward with affirmative evidence supporting that its assignment is valid, and Plaintiffs fail to proffer any allegations that rebut MERS's assignment of the mortgage to Defendant.  Thus, Plaintiffs fail to state a claim based on Defendant's failure to affirmatively demonstrate that it is a proper mortgagee entitling it to foreclose on the subject property that is plausible on its face.

Plaintiffs also argue that foreclosure was not authorized by § 667-5 because Defendant failed to "provide any evidence whatsoever in its Mortgagee's Affidavit of Foreclosure Under Power of Sale that it was assigned the Mortgage." Doc. No. 54, Pls.' Opp'n at 13.  Yet nothing in § 667-5 requires a Mortgagee's Affidavit of Foreclosure Under Power of Sale to include evidence that Defendant was assigned the mortgage.  And in any event, a review of the documents recorded in the Bureau of Conveyances establishes that Defendant was assigned the

mortgage -- the assignment from MERS, on behalf of Lehman Brothers, to Defendant was recorded on October 1, 2009.  Thus, in light of the judicially-noticed facts of this case, Plaintiffs cannot state a plausible claim based on Defendant's alleged failure to affirmatively establish that it was assigned the mortgage loan.

Plaintiffs further assert that Lehman Brothers could not have validly assigned the mortgage to Defendant on April 1, 2009 because it was in Chapter 11 bankruptcy proceedings at the time.  Doc. No. 54, Pls.' Opp'n at 14.  Assuming that Plaintiffs' mortgage loan was part of Lehman Brothers' bankruptcy estate,[2] Lehman Brothers' filing of Chapter 11 bankruptcy permitted it to continue to operate its business in the ordinary course.  *See* 11 U.S.C. §§ 1107(a), 1108; *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1194 n.3 (W.D. Wash. 2011) (noting that "[p]ursuant to sections 1107(a) and 1108 of the Bankruptcy Code, [Lehman Brothers] is authorized to operate its business and manage its properties as a debtor in possession for the benefit of its creditors, and it is on this basis that LBHI is prosecuting the present action"); *see*

_____

[2]  The court recognizes that Defendant submitted evidence in its Reply suggesting that Lehman Brothers endorsed the Note in blank prior to its bankruptcy.  *See* Doc. No. 59-1, Kristen Trompisz Decl. ¶ 6; Doc. No. 59-2, Def.'s Ex. 7; *see also* HRS § 490:3-205 (explaining that a blank indorsement makes the note payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed).  The court ultimately need not consider this evidence to determine that Plaintiffs cannot assert a plausible claim.

*also In re Alta+Cast, LLC*, 2004 WL 484881, at *5 (Bankr. D. Del. Mar. 2, 2004)

(stating that a "chapter 11 debtor is automatically authorized to operate its

business"); *In re Continental Air Lines, Inc.*, 61 B.R. 758, 762 n.1 (S.D. Tex. 1986)

(noting that "[d]ebtors-in-possession are automatically given leave to operate their

business after filing of a Chapter 11 petition . . . the interplay between sections

1106, 1107, and 1108 makes it clear that the debtor has all of the statutory rights

and duties of a trustee in bankruptcy, with a few limited exceptions").  Thus, the

fact that Lehman Brothers entered into Chapter 11 bankruptcy, on its own, does not

support a claim that Lehman Brothers *could not* have validly transferred the

mortgage to Defendant.

      Finally, Plaintiffs assert that Defendant failed to demonstrate that it

was the proper holder of the note at the time of foreclosure.  Specifically, Plaintiffs

argue that the note, as a negotiable instrument, requires an indorsement by the

holder and an actual transfer to Defendant.  Like Plaintiffs' previous arguments,

Plaintiff are effectively asking the court to add an affirmative requirement -- that

Defendant establish that it holds the note -- before Defendant can foreclose.  The

court rejects Plaintiffs' invitation as not supported in law.

      As this court has explained previously, "courts have soundly rejected

borrowers' claims based on a lender's non-possession of and/or failure to produce

the [] note." *Lindsey*, 2012 WL 488282, at *8; *see also White v. IndyMac Bank, FSB*, 2012 WL 966638, at *8 (D. Haw. Mar. 20, 2012) (rejecting a "show me the note" argument for a unfair and deceptive acts or practices claim); *Del Piano v. Mortg. Elec. Registration Sys, Inc*., 2012 WL 621975, at *10 (D. Haw. Feb. 24, 2012) (rejecting a "show me the note" claim as "baseless"); *Krakauer v. IndyMac Mort. Servs*., 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010) (citing *Angel v. BAC Home Loan Servicing, LP*, 2010 WL 4386775, at *9–10 (D. Haw. Oct. 26, 2010) ("[T]his Court and other district courts have rejected 'show me the note' arguments like Plaintiffs'."); *Mansour v. Cal-Western Reconveyance Corp*., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (discussing why courts routinely reject "show me the note" arguments to avoid foreclosure)).  Plaintiffs offer no reason why the court should diverge from this caselaw.

Specifically, Plaintiffs assert that Defendant has failed to establish that the note was properly "negotiated" to it pursuant to HRS § 490:3-201, which defines "negotiation" of a negotiable instrument under Hawaii's Uniform Commercial Code.  Whether the note was actually negotiated pursuant to HRS § 490:3-201, however, is of no consequence -- HRS § 490:3-203(b) explains that the "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument."  Thus,

Plaintiffs have offered no basis in law to support a requirement that Defendant must affirmatively establish that it holds the note.

Nor have Plaintiffs offered any basis to question that Defendant *does not* hold the note. Instead, Plaintiffs ask the court to draw the inference that Defendant may not physically hold the note because Defendant asserts that it obtained the note in 2007, yet the Assignment of Mortgage recorded in the Hawaii Bureau of Conveyances states that the note and mortgage were assigned to Defendant in 2009. *See* Doc. No. 62, at 2-3. This difference in dates, however, fails to support the inference that Defendant does not hold the note. Rather, at most, it suggests at most a confusion regarding when Defendant received the note. Thus, Plaintiffs have failed to state a claim that is plausible on its face based on Defendant's failure to prove that it holds the note.

In sum, although Plaintiffs offer numerous new theories of relief, none of them is cognizable in law. The court therefore finds that granting Plaintiffs leave to amend the FAC would be futile.

///

///

///

17

# V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Defendant's Motion to Dismiss, without leave to amend.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 18, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Pascual et al. v. Aurora Loan Servs. LLC.*, Civ. No. 10-00759 JMS-KSC, Order Granting Defendant Aurora Loan Services, LLC's Motion for Summary Judgment (Which the Court Construes as a Motion to Dismiss)