IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LESTER PASCUAL; OFELIA PASCUAL, | ) ) | CIVIL NO. 10-00759 JMS-KSC |
| | ) | FINDINGS AND |
| Plaintiffs, | ) ) | RECOMMENDATION TO GRANT IN PART AND DENY IN PART |
| vs. | ) ) | DEFENDANT AURORA LOAN SERVICES, LLC'S MOTION FOR |
| AURORA LOAN SERVICES, LLC; DOES 1-100 inclusive, | ) ) | ATTORNEYS' FEES AND NON-TAXABLE COSTS |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART DEFENDANT AURORA LOAN SERVICES, LLC'S
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS

Before the Court is Defendant Aurora Loan

Services, LLC's ("Defendant") Motion for Attorneys'

Fees and Non-Taxable Costs ("Motion"), filed July 3,

2012.  On July 27, 2012, Defendant filed a Statement of

Consultation ("SOC").  On August 29, 2012, Defendant

filed a Supplemental Declaration in support of its

Motion.[1]  Plaintiffs Lester and Ofelia Pascual

_____

[1]  The parties entered into a Joint Stipulation
continuing the Motion until after U.S. District Judge
J. Michael Seabright ruled on Plaintiffs' Motion for
Reconsideration and providing that should Defendant
prevail on the reconsideration motion, that it would
supplement the Motion to reflect the additional fees
and costs associated therewith.  Doc. No. 75.

(collectively "Plaintiffs") filed an Opposition on September 12, 2012.  Defendant filed a Reply on September 26, 2012.

The Court finds this matter suitable for disposition without a hearing pursuant to Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  After reviewing the Motion, the supporting and opposing memoranda, and the relevant case law, the Court FINDS and RECOMMENDS that the Motion be GRANTED IN PART and DENIED IN PART, and that Defendant be awarded $1,786.11 in attorneys' fees and $29.00 in non-taxable costs.

BACKGROUND

As the Court and the parties are familiar with the history of this case, the Court will limit the background to the facts relevant to the instant Motion.

On December 21, 2010, Plaintiff commenced the instant action, pleading the following causes of action: 1) declaratory relief; 2) injunctive relief; 3) contractual breach of the implied covenant of good

faith and fair dealing; 4) violation of the Truth in Lending Act ("TILA"); 5) violation of the Real Estate Settlement and Procedures Act ("RESPA"); 6) rescission; 7) unfair and deceptive business act practices; 8) breach of fiduciary duty; 9) unconscionability; 10) predatory lending; 11) quiet title; and 12) lack of standing; improper fictitious entity.

On June 28, 2011, Defendant filed a Motion for Summary Judgment.

On August 31, 2011, the parties entered into a Stipulation for (A) Leave to Amend Complaint; (B) Partial Dismissal with Prejudice; and (C) Withdrawal of Defendants' Motion for Summary judgment. Pursuant to the Stipulation, Plaintiffs agreed to dismiss with prejudice the following causes of action: 1) injunctive relief; 2) contractual breach of implied covenant of good faith and fair dealing; 3) TILA; 4) RESPA; 5) rescission; 6) unfair and/or deceptive trade practices; 7) breach of fiduciary duty; 8) unconscionability; 9) predatory lending; and 10) quiet title.

3

Plaintiffs filed their First Amended Complaint ("FAC") on September 12, 2011, alleging a single claim: breach of Hawaii Revised Statutes ("HRS") § 667-5. Defendant moved for summary judgment on February 29, 2012.

On June 19, 2012, Judge Seabright issued an Order Granting Defendant Aurora Loan Services, LLC's Motion for Summary Judgment (Which the Court Construes as a Motion to Dismiss) ("Dismissal Order"), wherein he found that 1) the FAC failed to assert a claim for violation of HRS § 667-5 and 2) leave to amend would be futile.

On July 3, 2012, Plaintiffs filed a Motion for Reconsideration of the Dismissal Order.  Judge Seabright denied the motion on August 20, 2012.

<u>DISCUSSION</u>

I.  <u>Attorneys' Fees</u>

   A.  <u>Entitlement to Attorneys' Fees</u>

Defendant argues that as the prevailing party in this action in the nature of assumpsit, it is entitled to $34,408.88 in attorneys' fees pursuant to

4

HRS § 607-14.  Plaintiffs contend that the Motion should be denied because the action was substantially in the nature of tort, Defendant failed to apportion between assumpsit and non-assumpsit claims, and Defendant failed to demonstrate that its request for fees does not exceed the 25% limitation set forth in § 607-14.

A federal court sitting in diversity must apply state law in determining whether the prevailing party is entitled to attorneys' fees.  See Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1236 (9th Cir. 2001).  Under Hawai'i law, "[o]rdinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement."  Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 305, 141 P.3d 459, 478 (2006) (citation and quotation marks omitted).

Section 607-14 states, in pertinent part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's

fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

Haw. Rev. Stat. § 607-14.   A court awarding attorneys' fees pursuant to § 607-14 must apportion the fees claimed between assumpsit and non-assumpsit claims, if practicable.   See Blair v. Ing, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001).

    1.  Prevailing Party

    Section 607-14 states that reasonable attorneys' fee shall be taxed in favor of the prevailing party and against the losing party in an action in the nature of assumpsit.   The Hawaii courts

6

have noted that "'[i]n general, a party in whose favor judgment is rendered by the district court is the prevailing party in that court, plaintiff or defendant, as the case may be. . . .'" <u>MFD Partners v. Murphy</u>, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992) (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.70[4], at 54-323-54-324, (2d ed. 1992)) (some alterations in original); <u>see also</u> <u>Village Park Cmty. Ass'n v. Nishimura</u>, 108 Hawai'i 487, 503, 122 P.3d 267, 283 (Haw. Ct. App. 2005) (citation omitted). Thus, under Hawaii law, in order to be deemed the prevailing party for purposes of § 607-14, Defendant must have obtained final judgment in its favor. Insofar as the Court entered final judgment in Defendant's favor pursuant to the Dismissal Order, Defendant is the prevailing party with respect to the HRS § 667-5 claim asserted in the FAC.

Although the parties stipulated to dismiss ten claims with prejudice, Defendant is also the prevailing party as to those claims. "[A] dismissal of [an]

action, albeit voluntary, is sufficient to deem a
defendant to be the prevailing party and the plaintiff
the losing party."  Ranger Ins. Co. v. Hinshaw, 103
Hawai'i 26, 31, 79 P.3d 119, 124 (2003).  Indeed,
"'[t]here is no requirement that the judgment in favor
of the prevailing party be a ruling on the merits of
the claim.'"  Id. (quoting Wong v. Takeuchi, 88 Hawai'i
46, 49, 961 P.2d 611, 614 (1998)) (alteration in
original); see also Blair, 96 Hawai'i at 331, 31 P.3d
at 189 ("[A] defendant who succeeds in obtaining a
judgment of dismissal is a prevailing party for the
purpose of fees under HRS § 607-14.").  Any dismissal
resulting in judgment is therefore sufficient to
support an award of attorneys' fees under Hawaii law.
Ranger, 103 Hawai'i at 31, 79 P.3d at 124 (citing Kona
Enters. v. Estate of Bernice Pauahi Bishop, 229 F.3d
877, 889 (9th Cir. 2000)).  A "voluntary dismissal of a
diversity action with prejudice is 'tantamount to a
judgment on the merits' for purposes of attorneys' fees
awards."  Id. (quoting Kona Enters., 229 F.3d at 889)

8

(quotations and citation omitted).  In the instant case, Plaintiffs' voluntary dismissal with prejudice of the ten claims is accordingly tantamount to a judgment on the merits and Defendant is the prevailing party.[2]

    2.  <u>Nature of the Claims</u>

    The Court's next inquiry is whether the claims are in the nature of assumpsit.  "Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations."  <u>808 Dev., LLC v. Murakami</u>, 111 Hawai'i 349, 366, 141 P.3d 996, 1013 (2006) (citation, emphases, and quotation marks omitted); <u>Helfand v. Gerson</u>, 105 F.3d 530, 537 (9th Cir. 1997) ("Under Hawaii case law, an action in the nature of assumpsit includes 'all possible contract claims.'").

    However, the mere fact that a claim "relate[s] to a contract between the parties does not render a dispute between the parties an assumpsit action."

_____

    [2]  Plaintiffs do not challenge Defendant's prevailing party status.

9

TSA Int'l, Ltd. v. Shimizu Corp., 92 Hawai'i 243, 264, 990 P.2d 713, 734 (1999).  "'[T]he nature of a claim' is 'determined from the substance of the entire pleading, the nature of the grievance, and the relief sought, rather than from the formal language employed or the form of the pleadings.'"  S. Utsunomiya Enters, Inc. v. Moomuku Country Club, 76 Hawai'i 396, 400, 879 P.2d 501, 505 (1994).  It is well-established that "[w]hen there is a doubt as to whether the action is in assumpsit or tort, there is a presumption that the suit is in assumpsit." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (quoting Leslie v. Estate of Tavares, 93 Hawai'i 1, 6, 994 P.2d 1047, 1052 (2000) (citing Healy-Tibbitts Constr. Co. v. Hawaiian Indep. Refinery, Inc., 673 F.2d 284, 286 (9th Cir. 1982)));  see also Helfand, 105 F.3d at 537.  "Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit." Id. (citing Healy-Tibbitts, 673 F.2d at 286).

10

Although the Court looks to the substance of the entire pleading, it must also "determine whether each individual claim alleged in a complaint sounds in assumpsit or tort."  Kona Enters., 229 F.3d at 885.

a.  HRS § 667-5

Defendant proffers that the § 667-5 claim, focusing on the validity of the foreclosure, is in the nature of assumpsit.  The Court is not persuaded.

Section 667-5, now repealed, set forth the procedures governing non-judicial foreclosures.[3] Defendant cites Rodenhurst v. Bank of Amer., 773 F. Supp. 2d 886, 894 (D. Haw. 2011), for the proposition

─────────────

[3]  It provided, in pertinent part:

> When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under a power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.

Haw. Rev. Stat. § 667-5.

11

that non-judicial foreclosures are matters of contract. The <u>Rodenhurst</u> court held that a "non-judicial foreclosure action is not an 'action to collect a debt' . . . non-judicial foreclosures are by definition matters of contract and are not court 'actions' at all." <u>Id.</u> (quoting <u>Ortiz v. Accredited Home Lenders, Inc.</u>, 639 F. Supp. 2d 1159, 1164-65 (S.D. Cal. 2009)). In other words, the court's characterization of non-judicial foreclosures as matters of contract was for the purpose of distinguishing between non-judicial foreclosures and court actions.  The fact that a mortgagee may foreclose pursuant to a power of sale in a mortgage does not transform Plaintiffs' § 667-5 claim into an assumpsit claim.  As the Court earlier stated, a dispute is not in the nature of assumpsit merely because it relates to a contract between the parties.

Plaintiffs' primary allegation in the FAC is that Defendant was not a legal mortgagee pursuant to § 667-5 and it was therefore not entitled to enforce the power of sale provision in the mortgage.  Part and

12

parcel of this claim is Defendant's assertion that
Mortgage Electronic Registration Systems, Inc. ("MERS")
lacked the authority to transfer an interest in the
property to Defendant.  Defendant argues that
Plaintiffs' efforts to attack the non-judicial
foreclosure necessarily attacks the contractual remedy
available to lenders when a mortgagor defaults.

Relying on a Ninth Circuit case, In re
Kekauoha-Alisa, 674 F.3d 1083 (9th Cir. 2012),
Defendant contends that a failure to comply with § 667-
5 is equivalent to a breach of contract.  In re
Kekauoha-Alisa, 674 F.3d at 1091.  In re Kakauoha-Alisa
is distinguishable.  There, the debtor refinanced a
mortgage on her property and executed a promissory note
to Ameriquest Mortgage Company.  Id. at 1085.
Ameriquest initiated foreclosure proceedings after the
debtor defaulted on her loan eight times.  Id.
Following the initiation of foreclosure proceedings,
Ameriquest assigned its interest in the mortgage to WM
Specialty Mortgage, LLC, but it continued to service

13

the mortgage.  Id. at 1085-86.  Just prior to the
scheduled foreclosure sale, the debtor filed for
Chapter 13 bankruptcy, which triggered an automatic
stay.  Id. at 1086.  To comply with the stay and § 667-
5, the law firm employed by the lenders postponed the
sale three times and properly announced the
postponements.  Id.  In a fourth attempt to postpone
the sale, a legal secretary from the law firm went to
the auction location, but did not announce or post
information about the postponement of the sale.  Id.

     Subsequently, the lenders moved for relief from
the bankruptcy stay in order to proceed with the
foreclosure sale.  Id.  The bankruptcy court granted
the request, the sale took place, a quitclaim deed
recorded, and the lenders obtained judgment in their
favor with respect to an ejectment action initiated in
state court.  Id.

     The debtor then filed a complaint in bankruptcy
court alleging, in pertinent part, that the sale
breached the terms of the mortgage contract and

14

violated various requirements under § 667-5.  Id.  The

Ninth Circuit agreed with the bankruptcy court's

determination that 1) the mortgage agreement specified

that the lenders could only foreclose in compliance

with the procedural requirements of § 667-5; and

2) because the improper postponement of the foreclosure

violated § 667-5, it also constituted a breach of

contract.  Id. at 1090-91.  The Ninth Circuit, like the

bankruptcy court, concluded that the mortgage required

compliance with § 667-5 as a condition precedent to the

lender's right to exercise the power of sale in the

mortgage.  Id. at 1091.

No such allegations or findings regarding

Defendant's obligations under the subject mortgage have

been made here.  Plaintiffs challenged Defendant's

actions because they believed that Defendant had no

relationship whatsoever to the mortgage.  Thus, while

this case involves and relates to a contract, i.e. the

mortgage, the claims are not based on the mortgage.  It

is the violation of § 667-5 and/or Defendant's ability

15

to avail itself of § 667-5, as opposed to a breach of a contract, that is at issue.  The allegation here is that Defendant lacked the authority to foreclose because it was not the mortgagee and it had no relationship to the mortgage, not that Defendant was obligated under the mortgage to comply with § 667-5 and that it breached the mortgage by failing to do so. Significantly, Plaintiffs attack the very basis for the foreclosure.  Plaintiffs have not contended that Defendant failed to comply with the requirements set forth in § 667-5.  Instead, Plaintiffs' challenge is a fundamental one:  whether Defendant even had the right to invoke § 667-5.  The allegations in the FAC therefore sound in tort, not assumpsit.

Finally, Defendant submits that the enforceability of an assignment is a question of contract law.  For the reasons already discussed above, allegations regarding MERS' lack of authority to transfer an interest in the subject property to Defendant are not in the nature of assumpsit merely

because they relate to a contract.  The Court accordingly concludes that Plaintiffs' § 667-5 claim is not in the nature of assumpsit.

      b.   <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Of the twelve claims asserted in the original Complaint, Defendant only identifies the breach of implied covenant of good faith and fair dealing as being in the nature of assumpsit.  The Court agrees that this is an assumpsit claim.  <u>JJCO, Inc. v. Isuzu Motors Am., Inc.</u>, Civil No. 08-00419 SOM/LEK, 2010 WL 4272980, at *3 (D. Haw. Oct. 21, 2010); <u>Skanning v. Sorensen</u>, Civil No. 09-00364 DAE-KSC, 2009 WL 5449149, at *5 (D. Haw. Dec. 10, 2009).

      c. <u>Remaining Claims in the Original Complaint</u>

There being no dispute that the remaining claims in the original Complaint are not in the nature of assumpsit, the Court finds that they are not.

      3.   <u>Apportionment Between Assumpsit and Non-assumpsit Claims</u>

Having concluded that one of the twelve claims

17

asserted by Plaintiffs in their original Complaint and
FAC are in the nature of assumpsit, the Court must now
determine whether it is practicable to apportion the
award of attorneys' fees between said claims.
Defendant argues that apportionment is inappropriate
because all of the claims are premised on the execution
and enforceability of the underlying mortgage and
assignment to Defendant.

When a case involves both assumpsit and non-
assumpsit claims, "a court must base its award of fees,
if practicable, on an apportionment of the fees claimed
between assumpsit and non-assumpsit claims." TSA, 92
Hawai'i at 264, 990 P.2d at 734 (citation omitted).  In
conducting this analysis, the court must determine
whether each individual claim alleged in the complaint
sounds in assumpsit or in tort and apportion fees
between the assumpsit and non-assumpsit claims if
practicable.  Kona Enters., 229 F.3d at 885.  However,
in some cases it may be impracticable or impossible to
apportion fees.  See, e.g., Blair, 96 Hawai'i at 333,

31 P.3d at 190 ("Because the negligence claim in this
case was derived from the alleged implied contract and
was inextricably linked to the implied contract claim
by virtue of the malpractice suit, we hold that it is
impracticable, if not impossible, to apportion the fees
between the assumpsit and non-assumpsit claims.").
Thus, under <u>Blair</u>, a court may award reasonable
attorneys' fees pursuant to HRS § 607-14 to a party who
succeeds on a contract claim that is "inextricably
linked" to a tort claim, and decline to apportion fees.
<u>Id.</u>

        In the present case, the Court finds that
apportionment is both practicable and necessary.  Given
the Court's finding that Plaintiffs' § 667-5 claim is
not in the nature of assumpsit, none of the fees
incurred following the entry of the Stipulation are
recoverable.  The fees incurred through the entry of
the Stipulation can be apportioned, at least in part,
because all of defense counsel's time was clearly not
dedicated to the breach of implied covenant of good

faith and fair dealing claim.  Indeed, only 1.5 pages

of the legal argument in Defendant's first motion for

summary judgment were dedicated to said claim.  As

such, Defendant's argument against apportionment is

unavailing.

Defendant relies on Eckerle v. Deutsche Bank

National Trust, Civ. No. 10-00474 SOM-BMK, 2012 WL

896266 (D. Haw. Feb. 21, 2012) to support its

contention that the claims are so inextricably

intertwined that apportionment is inappropriate.

Eckerle is distinguishable.  There, all of the claims

stemmed from the breach of an alleged loan modification

agreement and the plaintiffs conceded as much.  Id. at

*1, *4.  This case, by contrast, contains separate and

distinct claims that are severable from the breach of

implied covenant of good faith and fair dealing claim,

even though the claims implicated a mortgage.  Notably,

the assumpsit claim is not a breach of contract claim

from which all other claims stem.  After carefully

reviewing the time sheets and the allegations asserted

20

as to each claim in the original Complaint, the Court concludes that any fee award should be reduced by 90% to account for work completed on claims for which Defendant is not entitled to attorneys' fees.  See, e.g., <u>Ko Olina Dev., LLC v. Centex Homes</u>, CV. NO. 09-00272 DAE-LEK, 2011 WL 1235548 at **7-8 (D. Haw. Mar. 29, 2011) (apportioning between claims and reducing award by 20%).

    4.  <u>Twenty-Five Percent Limitation on Fees</u>

The parties dispute the amount upon which § 607-14's 25% limitation should be based.  Defendant asserts that the $630,000.00 loan amount is the proper benchmark for the limitation.  Plaintiffs, on the other hand, argue that the value of reinstatement of the mortgage loan, if anything, is the proper amount. Plaintiffs submit that Defendant has failed to quantify that value, but have not themselves offered a figure for the Court's consideration.

Because Defendant obtained judgment in this action, the limitation should be based on the amount

sued for.  Haw. Rev. Stat. § 607-14.  Although Plaintiffs did not pray for a specific amount in damages, in the original Complaint, they sought compensatory, special, general, treble, and punitive damages.  Plaintiffs additionally requested attorneys' fees and costs; a declaration that they are the prevailing party; an injunction enjoining foreclosure proceedings; a judgment rescinding the loan and security agreement and setting forth the terms of restitution; and a judgment ordering that Defendant provide proof of authority to foreclose by producing the promissory note.

In the FAC, Plaintiffs prayed for a declaratory judgment confirming that Defendant was not a valid mortgagee for the purposes of § 667-5 because MERS did not have the authority to assign the mortgage to Defendant and an order that the non-judicial foreclosure sale is void because it was conducted in violation of § 667-5.  Under the circumstances, it would be proper for the Court to base the calculation

on the value of the loan amount.  <u>Eckerle</u>, 2012 WL
896266, at *4 (relying on amount of original mortgage
for the purposes of the 25% limitation).[4]

   B.  <u>Calculation of Fees</u>

        The Court shall now calculate the
reasonableness of the fees requested by Defendant.
Hawaii courts calculate reasonable attorneys' fees
based on a method that is virtually identical to the
traditional "lodestar" calculation set forth in <u>Hensley
v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  <u>See</u> <u>DFS Group
L.P. v. Paiea Props.</u>, 110 Hawai'i 217, 222, 131 P.3d
500, 505 (2006).  The court must determine a reasonable
fee by multiplying the number of hours reasonably
expended by a reasonable hourly rate.  <u>See</u> <u>id.</u> at 222-
23, 131 P.3d at 505-06.  In addition, Hawaii courts may
consider the following factors:

        (1) the time and labor required, the
        novelty and difficulty of the questions
        involved and the skill requisite properly

_____

        [4]  Given Defendant's fee request and the Court's
ultimate recommendation as to the fee award, the figure
could be substantially lower and the award would still
fall well within the 25% limitation.

to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai'i,

106 Hawai'i 416, 435, 106 P.3d 339, 358 (2005)

(citations omitted).  These factors, however, are

merely guides; courts need not consider them in every

case.  See id.  In certain types of cases, some of

these factors may justify applying a multiplier to the

"lodestar" amount.  See Chun v. Bd. of Trs. of

Employees' Ret. Sys. of Hawai'i, 92 Hawai'i 432, 442,

992 P.2d 127, 137 (2000).

Defendant requests $34,408.88 in attorneys'

fees,[5] as reflected in the following table:

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| Jade Lynne Ching | 31 | $320.00 | $9,920.00 |
| Neil F. Hulbert | 0.9 | $360.00 | $324.00 |
| Peter S. Knapman | 28.6 | $250.00 | $7,150.00 |
| Shellie Park-Hoapili | 36.9 | $200.00 | $7,380.00 |
| Tyler P. McNish | 46.6 | $150.00 | $6,990.00 |
| Jael E. Makagon | 0.9 | $165.00 | $148.50 |
| Michelle Comeau | 0.7 | $190.00 | $133.00 |
| Noreen M. Kanada (paralegal) | 4.1 | $100.00 | $410.00 |
| Gail Pang (document analyst) | 5 | $50.00 | $250.00 |

[5]  The Court's calculations differ from the calculations provided by Defendant.  The Court will rely on its own calculations in issuing its recommendation.  The hours in this table include the additional hours requested in the supplemental declaration for Ms. Ching and Ms. Comeau, as well as the reduction to Ms. Park-Hoapili's hours noted in the SOC.

| **TAX (4.712%)** | | | $1,541.08 |
| --- | --- | --- | --- |
| **TOTALS** | 154.7 | | $34,246.58 |

### 1.   Reasonable Hourly Rate

As reflected in the above table, Defendant requests the following hourly rates: 1) Jade Ching - $320; 2) Neil Hulbert - $360 ; 3) Peter Knapman - $250; 4) Shellie Park-Hoapili - $200; 5) Tyler McNish - $150; 6) Jael Makagon - $165; 7) Michelle Comeau - $190; 8) Noreen Kanada (paralegal) - $100; and 9) Gail Pang (document analyst) - $50.  The Hawaii courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation and some courts have considered federal law in determining a reasonable hourly rate.  See, e.g., Reiche v. Ferrera, No. 24449, 2003 WL 139608, at *8 (Hawai'i Ct. App. Jan. 16, 2003) ("The reasonable hourly rate is that prevailing in the community for similar work." (citing United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)).  But see DFS Group, 110

Hawai'i at 223, 131 P.3d at 506 (determining a reasonable hourly rate by calculating the average of the four requested rates).  This Court therefore finds that federal case law on the determination of a reasonable hourly rate is instructive in the instant case.

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"); see also Chun, 106 Hawai'i at 435, 106 P.3d at 358 (listing "the customary charges of the Bar for similar services" as a factor that may be considered).  It is the burden of the fee applicant to produce satisfactory evidence, in

27

addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Plaintiffs have not challenged the rates requested by defense counsel.  This Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation.  Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court, the Court's familiarity with this case, and defense counsel's submissions, this Court finds the following rates to be reasonable: 1) Ms. Ching - $275; 2) Mr. Hulbert - $300; 3) Mr. Knapman - $240; 4) Ms. Park-Hoapili - $200;[6] 5) Mr. McNish - $145; 6) Mr. Makagon -

---

[6]    Senior U.S. District Judge Alan Kay established this as a reasonable hourly rate for Ms. Park-Hoapili. Olson v. Lui, CV 10-00691 ACK-RLP, 2012 WL 3686682, at *5 (D. Haw. Aug. 27, 2012).

28

$150; 7) Ms. Comeau - $150; 8) Ms. Kanada - $85;[7] and 9) Ms. Pang - $50.[8]

> 2.   Reasonableness of Hours Expended

For the reasoning stated in Section B.1, this Court finds federal case instructive on the reasonableness of the time expended by counsel.  Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted); see also Sharp v. Hui Wahine, 49 Haw. 241, 247, 413 P.2d 242, 246 (1966) (the

---

[7]   Judge Kay deemed $85 to be a reasonable hourly rate for Ms. Kanada.  Olson, 2012 WL 3686682, at *5.

[8]   Blake v. Nishimura, Civil No. 08-00281 LEK, 2010 WL 1372420 at *6, *8 (D. Haw. Mar. 31, 2010) (finding $50 to be a reasonable hourly rate but concluding that the tasks completed by Ms. Pang were ministerial and therefore non-compensable).  Although the Court accepts as reasonable the $50 hourly rate based on precedent, the Court declines to award fees for work completed by a document analyst, for the reasons articulated below.

party requesting fees has the burden to prove that the requested fees were reasonably and necessarily incurred).  The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  <u>See Tirona</u>, 821 F. Supp. at 637 (citing <u>INVST Fin. Group v. Chem-Nuclear Sys.</u>, 815 F.2d 391, 404 (6th Cir. 1987), <u>cert. denied</u>, 484 U.S. 927 (1987)).  Courts have the "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." <u>Soler v. G & U, Inc.</u>, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. <u>See Gates</u>, 987 F.2d at 1399 (quoting <u>Hensley</u>, 461 U.S. at 433-34).

Defendant asserts that it expended the following hours litigating this action: 1) Case Development, Background Investigation and Case Administration - 20.3 hours;[9] 2) Pleadings - 15.4

---

[9]  The time entries in the table provided in Exhibit 4 to the Motion total 19.6, not 20.3.

hours;[10] 3) Interrogatories, Document Production, and Other Written Discovery - 9.9 hours;[11] 4) Motions Practice - 103.6[12] and 5) Attend Court Hearings - 5.6 hours.[13]  After careful review of Defendant's submissions,[14] the Court finds that the following reductions are necessary and appropriate in addition to the time expended following the entry of the Stipulation, which the Court has already determined is non-compensable.  The Court has limited its review to entries dated February 18, 2011, through August 31,

---

[10]  The time entries in Exhibit 4 total 13.3, not 15.4.

[11]  The time entries in Exhibit 4 total 9.5, not 9.9.

[12]  The time entries in Exhibit 4 total 95.8, not 103.6.  All of the time entries related to motions practice on page 8 are duplicates.  However, even if they were included, the total would not amount to 103.6 hours.

[13]  As with the motions practice entries, there are duplicate time entries on page 8 for attendance at court hearings.  However, they were not included in Defendant's calculations.

[14]  Plaintiffs did not challenge any specific entries.

2011.

   a.   Clerical or Ministerial Tasks

        Some of counsel's time entries reflect billing

for clerical/ministerial work, i.e., communication with

the Court, reviewing court filings and other notices,

and are therefore non-compensable.   "[C]lerical or

ministerial costs are part of an attorney's overhead

and are reflected in the charged hourly rate."

Jeremiah B. v. Dep't of Educ., Civil No. 09-00262

DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010)

(citing Sheffer v. Experian Info. Solutions, Inc., 290

F. Supp. 2d 538, 549 (E.D. Pa. 2003)).   Tasks such as

reviewing Court-generated notices, notifying clients of

court hearings, filing documents with the Court,

communication with court staff, scheduling, and

corresponding regarding deadlines, are clerical and not

compensable.   Id. (finding that entries for

communications about, and internal office management

of, hearing dates and due dates are clerical in

nature); Nicholas M. ex rel. Laura M. v. Dep't of

32

<u>Educ., Haw.</u>, Civ. No. 09-00162 HG-LEK, 2010 WL 234862, at *5 (D. Haw. Jan. 21, 2010) (finding that tasks such as informing a client that a document has been filed or informing client of a hearing date is clerical or ministerial); <u>Haw. Carpenters Trust Funds v. Cosier Const., Inc.</u>, Civil No. CV 08-00442 SOM-LEK, 2009 WL 291188, at *3 (D. Haw. Feb. 03, 2009) (finding that review of district court filing notices are clerical and non-compensable); <u>Bandalan v. Castle & Cooke Resorts, LLC</u>, Civil No. 07-00591 DAE-LEK, 2009 WL 1955328, at *5 (D. Haw. June 30, 2009) (clerical tasks include reviewing notices of the date and time for motions hearings and notices of filing deadlines); <u>Young v. Geico Indem. Co.</u>, Civ. No. 08-00171 JMS/KSC, 2009 WL 3049640, at *8 (D. Haw. Sept. 23, 2009) (communications with the court are clerical and not compensable).

Here, Mr. Knapman expended 0.4 hours on clerical tasks.  Therefore, 0.4 hours should be excluded from Defendant's fee award.  The Court also

concludes that the 3.8 hours expended by Ms. Pang were
for clerical/ministerial tasks.  Regardless, the Court
does not ordinarily award fees for work completed by
document analysts.  Given the nature of this case and
the non-complexity of the issues, the Court finds no
reason to deviate from this practice.[15]  For these
reasons, Defendant's award should be reduced by a total
of 4.2 hours.

### b. Inadequate Entries

Although counsel's time entries are in large
part sufficiently descriptive, a few tasks must be
excluded due to the inadequacy of the descriptions.
Local Rule 54.3(d)(2) requires that the "party seeking
an award of fees must describe adequately the services
rendered, so that the reasonableness of the requested

---

[15] In the rare case where the Court has found the time expended by those other than attorneys or paralegals to be compensable, the reasoning was that such time was allowable because of the unique demands of litigating a class action.  Donkerbrook v. Title Guar. Escrow Servs., Inc., Civil No. 10-00616 LEK-RLP, 2011 WL 3649539, at *8 (D. Haw. Aug. 18, 2011).  No such exceptional circumstances exist here.

fees can be evaluated." Local Rule 54.3(d)(2). The rule further provides:

> [C]ounsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine, but must nevertheless **furnish an adequate non-privileged description of the services in question.** If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly. **For example, the time entries for telephone conferences must include an identification of all participants <u>and the reason for the call</u>**.

Local Rule 54.3(d)(2) (emphases added). Here, certain entries do not include the subject matter of the discussion/email. As a result, the Court recommends that Mr. McNish's hours be reduced by 0.4 hours and Mr. Knapman's hours be reduced by 0.8 hours[16] for inadequate descriptions.

_____

[16] With respect to Mr. Knapman's deficient description, it appears that a portion of the description was cut off. Nevertheless, because the Court is unable to fully assess the task for which Defendant seeks fees, it must recommend a denial of the portion of time requested.

35

c.   <u>Block Billing</u>

Finally, the Court must reduce some of the requested hours due to "block billing."  "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." <u>Robinson v. City of Edmond</u>, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted).  Block billing entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.  <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 948 (9th Cir. 2007).  <u>See also id.</u> (citing <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple

36

tasks, making it impossible to evaluate their reasonableness")); see also Hensley, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")).   Indeed, it is a challenge to determine the reasonableness of a time entry when it includes several tasks.

Counsel's use of block billing with respect to certain time entries, though limited, makes it difficult, if not impossible, for the Court to ascertain the reasonableness of the hours expended as to those entries.  Accordingly, the Court imposes an across-the-board reduction of 15% as to the entries that are in the "block billing" format.  Signature Homes of Haw., LLC v. Cascade Sur. and Bonding, Inc., No. CV 06-00663 JMS-BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block billed hours by 20%).  This results in the following reductions:  Ms. Ching - 0.12 hours; 2) Mr. Knapman - 0.06 hours; and 3) Ms. Kanada - 0.195 hours.

3.   <u>Total Fee Award</u>

The Court is satisfied that Plaintiff has established the appropriateness of the following attorneys' fees incurred in the present action:

| **NAME** | **HOURS** | **RATE** | **TOTAL** |
|---|---|---|---|
| Jade Lynne Ching | 14.18 | $275.00 | $3,899.50 |
| Neil F. Hulbert | 0.9 | $300.00 | $270.00 |
| Peter S. Knapman | 23.9 | $240.00 | $5,736.00 |
| Shellie Park-Hoapili | 0 | $200.00 | $0.00 |
| Tyler P. McNish | 46.1 | $145.00 | $6,684.50 |
| Jael E. Makagon | 0.9 | $150.00 | $135.00 |
| Michelle Comeau | 0 | $150.00 | $0.00 |
| Noreen M. Kanada (paralegal) | 3.91 | $85.00 | $332.35 |
| Gail Pang (document analyst) | 0 | $50.00 | $0.00 |
| **TAX (4.712%)** | | | $803.74 |
| **TOTALS** | 89.89 | | $17,861.09 |

Reducing the $17,861.09 award by 90% to account for work completed on non-assumpsit claims, the Court recommends that the district court award Defendant **$1,786.11** in attorneys' fees.  This is well below the 25% limitation set forth in § 607-14.

II. Non-Taxable Costs

Defendant additionally requests $29.00 in non-taxable costs, i.e. postage and messenger services. Non-taxable expenses are awarded pursuant to state law in diversity cases.  Farmers Ins., 250 F.3d at 1236. While HRS § 607-14 does not provide for the recovery of expenses, HRS § 607-9 expressly authorizes the recovery of

> [a]ll actual disbursements, including but
> not limited to, intrastate travel expenses
> for witnesses and counsel, expenses for
> deposition transcript originals and
> copies, and other incidental expenses,
> including copying costs, intrastate long
> distance telephone charges, and postage,
> sworn to by an attorney or a party, and
> deemed reasonable by the court . . . .

Haw. Rev. Stat. § 607-9.  The Court finds that the requested costs are reasonable.  The Court therefore

recommends that Defendant be awarded $29.00 in non-taxable costs.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court FINDS and RECOMMENDS that Defendant's Motion for Attorneys' Fees and Non-Taxable Costs, filed July 3, 2012, be GRANTED IN PART and DENIED IN PART. The Court recommends that the district court award Defendant $1,786.11 in attorneys' fees and $29.00 in non-taxable costs.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, October 31, 2012.



Kevin S.C. Chang
United States Magistrate Judge

<u>PASCUAL, ET AL. V. AURORA LOAN SERVICES</u>; CIVIL NO. 10-00759 JMS-KSC; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT AURORA LOAN SERVICES, LLC'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS